IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TONY SENTEL STEPHENS,<br><br>*Defendant.* | Case No. 3:25-CR-70 |

### STATEMENT OF FACTS

The United States and the defendant, TONY SENTEL STEPHENS, agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

### Introductory Allegations

At all times relevant and material to this Statement of Facts:

1. The defendant, TONY SENTEL STEPHENS (hereafter, "STEPHENS" or "defendant"), was a resident of the Eastern District of Virginia. Janiqua Kiara Wright (hereafter, "Wright") was also a resident of the Eastern District of Virginia.

2. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States Government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disaster.

### *Paycheck Protection Program*

3. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses, sole proprietors, and other entities for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses and sole proprietors during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

4. To obtain a PPP loan, a qualifying applicant had to submit a PPP loan application, which was signed by an authorized representative of the business or sole proprietorship. The PPP loan application required the applicant (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the applicant was in operation on February 15, 2020. In addition, applicants seeking a PPP loan as sole proprietors without employees (other than the owners) were required to provide documentation showing the business's gross income from either 2019 or 2020.

5. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in either the Commonwealth of Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

6. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the

borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

7. While the first draw PPP program ended on May 31, 2021, certain borrowers were eligible to apply for second draw PPP loans. Eligible borrowers included businesses that: had no more than 300 employees; which had previously received a PPP loan and would or had already used the full amount only for authorized uses; and which could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. Second draw PPP loans were approved with the same general loan terms as the first draw PPP loans.

## Count One
(Conspiracy to Commit Wire Fraud)

8. The allegations contained in paragraphs 1 through 7 are realleged and incorporated as if fully set forth herein.

9. From on or about April of 2021, and continuing through at least on or about July 2021, the exact dates being unknown, in the Eastern District of Virginia and within the jurisdiction of this Court, TONY SENTEL STEPHENS, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed with others, known and unknown, to devise a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises through the transmission of signs, signals, and writings in interstate commerce.

10. The purpose of this conspiracy was for the defendant and Wright to unjustly enrich themselves by fraudulently obtaining COVID-19 relief funds through the submission of false and misleading applications to Womply, a fintech company assisting businesses in applying for PPP loans, and financial institutions.

### *Manner and Means of the Conspiracy*

11. The manner and means through which the defendant and Wright sought to accomplish the purpose of their conspiracy included, but was not limited to, the following.

12. On or about April 7, 2021, Wright, with the assistance of STEPHENS, knowingly and deliberately submitted a false and misleading PPP application and supporting documentation to Womply. Wright sought a PPP loan for a purported sole proprietorship in her name, and she included false information in her application to create the impression she was eligible to receive this loan, including, but not limited to, the following falsehoods and misrepresentations:

   a. Wright falsely represented that her sole proprietorship was established on January 1, 2019, when, in truth and fact, no such business existed; and

   b. Wright falsely represented that her sole proprietorship generated gross income in the amount of $117,000 for tax year 2019, when, in truth and fact, her nonexistent sole proprietorship had generated no income.

13. Wright's application also contained false certifications. For instance, Wright falsely certified that her sole proprietorship was in operation on February 15, 2020, when, as the defendant and Wright then and there knew, Wright did not own or operate a sole proprietorship at or before that time.

14. To substantiate the false information provided in her PPP application, Wright, with the assistance of STEPHENS, submitted fraudulent supporting documentation to Womply. For instance, Wright submitted a fraudulent bank statement that falsely represented Wright having $84,210 in funds between her purported checking and savings accounts at Navy Federal Credit Union in February 2019. In truth and fact, Wright did not have any bank accounts with Navy Federal Credit Union in 2019, and she only began banking with Navy Federal Credit Union in or around August of 2020. The fraudulent bank statement was created by altering a legitimate bank statement issued to STEPHENS by Navy Federal Credit Union.

15. Wright also created and submitted as part of her application a fictitious Internal Revenue Service ("IRS") Form Schedule C for tax year 2019 that was not filed with the IRS. This document was created to corroborate Wright's false assertion on her PPP application that her sole proprietorship had gross income in the amount of $117,000.

16. Wright's PPP loan application was ultimately denied, but she assisted STEPHENS in successfully obtaining two fraudulent PPP loans.

17. On or about April 15, 2021, STEPHENS, assisted by Wright, submitted a false and misleading PPP application to Womply for STEPHENS's purported sole proprietorship. In this application, STEPHENS claimed that his sole proprietorship was established on January 1, 2019 and that the business generated gross income of $117,000 in tax year 2019. These representations were false, as STEPHENS and Wright well knew.

18. To substantiate the false information in his PPP application, STEPHENS, assisted by Wright, submitted fraudulent supporting documentation that was closely similar to the fraudulent documents Wright submitted in her PPP application. For instance, STEPHENS submitted a forged Navy Federal Credit Union bank statement reflecting the exact same account balances and statement period as the fraudulent bank statement Wright submitted in her PPP application. Likewise, STEPHENS submitted a fraudulent IRS Form Schedule C for tax year 2019 that listed identical income and expenses as the fraudulent tax return Wright submitted in her PPP application.

19. STEPHENS's PPP application was ultimately approved, and on or about April 16, 2021, STEPHENS signed the promissory note. Thereafter, on or about July 13, 2021, $20,833 in PPP loan proceeds were ultimately disbursed by a financial institution to STEPHENS's bank account.

20. On or about May 20, 2021, STEPHENS, with the assistance of Wright, submitted a second draw PPP application for his purported sole proprietorship to Womply. This application contained many of the same false statements and misrepresentations as STEPHENS's first PPP application, including, but not limited to, a false representation that STEPHENS's sole proprietorship generated $117,000 in gross income in tax year 2019.

21. To substantiate the false information in this second draw PPP application, STEPHENS submitted the same fraudulent bank statement and fraudulent IRS Form Schedule C that STEPHENS and Wright had submitted in STEPHENS's first PPP application.

22. STEPHENS's second draw PPP application was ultimately approved, and on or about May 28, 2021, STEPHENS signed the promissory note. Thereafter, on or about June 7, 2021, $20,833 in PPP loan proceeds were disbursed by a financial institution to STEPHENS's personal bank account.

23. In furtherance of this conspiracy, STEPHENS and Wright caused wire transmissions in interstate commerce, including wire transmissions of fraudulent PPP applications from the Eastern District of Virginia to servers outside the Commonwealth of Virginia.

*Overt Acts in Furtherance of the Scheme*

24. In furtherance of the conspiracy, STEPHENS and Wright did commit and cause to be committed the following overt acts, among others, in the Eastern District of Virginia:

   a. On or about April 7, 2021, STEPHENS provided Wright with a fraudulent bank statement purportedly issued by Navy Federal Credit Union so that Wright could submit this fraudulent document in her PPP application to Womply.

   b. On or about April 7, 2021, Wright electronically submitted her false and misleading PPP application to Womply for her purported sole proprietorship.

    c. On or about April 15, 2021, STEPHENS, with the assistance of Wright, electronically submitted a fraudulent PPP application to Womply which included false and misleading supporting documentation.

25. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

26. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date: 5/15/25    By: _____
Avi Panth
Assistant United States Attorney

7

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, TONY SENTEL STEPHENS, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 5-15-25         *Tony Stephens*
                      TONY SENTEL STEPHENS

I am Stephanie Henkle, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 5/15/25         *[signature]*
                      Stephanie Henkle, Esq.
                      Attorney for TONY SENTEL STEPHENS